170 N.J. Super. 373 (1979)
406 A.2d 494
DANIEL CLARKSON, PLAINTIFF,
v.
SELECTED RISKS INSURANCE COMPANY, DEFENDANT,
v.
NEWTON TRUST COMPANY, THIRD-PARTY DEFENDANT, AND CONTINENTAL BANK, THIRD-PARTY DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
LEONARD TISHGART, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided September 10, 1979.
*377 Mr. Peter L. Masnik for plaintiff (Messrs. Kalikman and Masnik, attorneys).
Mr. Thomas H. Morgan for defendant (Messrs. Capehart & Scatchard, attorneys).
Mr. Barry N. Shaw for third-party defendant and third-party plaintiff Continental Bank.
Mr. David L. Johnson for third-party defendant Newton Trust (Messrs. Morris, Downing & Sherred, attorneys).
Messrs. Peter T. Parashes, Edward Sullivan for third-party defendant, Leonard Tishgart (Messrs. Toll, Pinsky & Sullivan, attorneys).
HAINES, J.S.C.
Plaintiff, Daniel Clarkson, a Pennsylvania citizen, retained Roger S. Wolfe, a Pennsylvania attorney, to represent him in a suit for damages arising from a claim of negligence. Wolfe commenced suit in Pennsylvania but was suspended from the practice of law before the proceedings were concluded. After advising Clarkson of his suspension he requested that he nonetheless be allowed to continue with the litigation since he was familiar with the case and expected to be reinstated shortly. Clarkson agreed. Wolfe, without Clarkson's knowledge, then had Leonard Tishgart, another Pennsylvania attorney, substituted for him as counsel of record in the negligence case. Thereafter, the case was settled for $7,988.62 without Clarkson's prior approval and without informing him of the settlement agreement.
Selected Risks Insurance Company, a New Jersey corporation, insured the defendant in Clarkson's suit. Upon receiving a release purportedly executed by Clarkson, it forwarded a check in the amount of the settlement to Tishgart. The check was payable to "Daniel Clarkson and Leonard Tishgart, Esquire, his attorney" and was dated January 19, 1977. Tishgart endorsed *378 the check and turned it over to Wolfe, who endorsed Clarkson's name on the check and deposited it in Wolfe's trust account at Continental Bank in Philadelphia. Continental is a Pennsylvania corporation. The check was drawn on Newton Trust Company, a New Jersey corporation. Continental, as collecting bank, endorsed the check "P.E.G.," i.e., prior endorsements guaranteed, and sent it to Newton for payment. Final settlement was made on or about January 30, 1977 by Newton, and Selected Risks' account was debited accordingly.
Wolfe withdrew all the money from the trust account for his own purposes, forwarding nothing to Clarkson, and shortly thereafter committed suicide. Clarkson learned of Wolfe's death in August 1977, called his office and was referred to Tishgart. After several unsuccessful attempts he finally reached Tishgart in October 1977. Tishgart advised him, for the first time, that the case had been settled and told him there may have been a forgery. On Tishgart's recommendation, Clarkson contacted Arthur Marion, a Pennsylvania attorney appointed to examine Wolfe's affairs. Marion advised Newton Trust of the forgery by letter dated December 21, 1977. Newton immediately advised Selected Risks of the circumstance and notified Continental of the forgery by letter dated February 24, 1978.
On May 31, 1978 Clarkson filed the within suit against Selected Risks. Selected Risks filed third-party complaints against Newton and Continental, plaintiff joined Newton as a defendant to his complaint, Newton crossclaimed against Continental and Continental sued Tishgart. All parties then became involved in various motions for dismissal and summary judgment, motions which, except as indicated, involve no factual disputes and may be disposed of without a trial. R. 4:46.
It is clear from the complaint that Clarkson's claims against Selected Risks are based upon the settlement agreement. In its first count the Clarkson complaint alleges that Selected Risks is in breach of the agreement because it never paid him the agreed *379 upon sum. The second count of the complaint, while sounding in tort, nevertheless rests upon the settlement agreement, for it alleges that Selected Risks' payment of the settlement funds to a person other than plaintiff was an act of negligence.
When a principal institutes suit to enforce an unauthorized agreement made by his agent, the principal affirms or ratifies the transaction. See Restatement, Agency 2d, §§ 82, 83 and 97(a) (1958). Neither Wolfe nor Tishgart was expressly authorized to settle Clarkson's claim, and the mere employment of Wolfe is an insufficient predicate for a finding that he had apparent authority to settle. 7 C.J.S. Attorney and Client § 105 (1937). Consequently, by filing the complaint Clarkson ratified the settlement agreement. More importantly, for present purposes, he also ratified the authority of his agent to accept payment from Selected Risks. As the Supreme Court pointed out in Thermo Contracting Corp. v. Bank of N.J., 69 N.J. 352, 362 (1973): "A principal must either ratify the entire transaction or repudiate it entirely, and cannot pick and choose only what is advantageous to him."
Under this reasoning it must be concluded that Clarkson ratified the settlement and the payment.
Although there is a split of authority as to the consequences of this ratification, see Annotation, "Discharge of Debtor Who Makes Payment by Delivering Check to Creditor to Latter's Agent, Where Agent Forges Creditor's Signature and Absconds with Proceeds," 49 A.L.R.3d 843 (1973), New Jersey in Gross v. Grimaldi, 64 N.J. Super. 457, 464 (App.Div. 1960), certif. den. 34 N.J. 469 (1961), acknowledged its agreement with the position set forth in Restatement, Agency 2d, § 178(2) (1958), which states:
If an agent who is authorized to receive a check payable to the principal as conditional payment forges the principal's endorsement to such a check, the maker is relieved of liability to the principal if the drawee bank pays the check and charges the amount to the maker.
*380 Comment (c) to this section goes on to explain:
Thus, if the drawee bank cashes the check after a forgery and embezzlement by the agent and charges the amount to the debtor, the latter is relieved of his debt. The creditor then would be subrogated to the right of the debtor against the bank. If, in the meantime, the bank becomes insolvent, it is the creditor and not the debtor who loses.
These principles were applied to a nearly identical factual situation by the Supreme Court of California in Navrides v. Zurich Ins. Co., 5 Cal.3d 698, 97 Cal. Rptr. 309, 488 P.2d 637 (1971). After suffering injury on the premises of another, plaintiff hired an attorney, who instituted suit on her behalf. A settlement negotiated between the attorney and defendant's insurance carrier was rejected by plaintiff without the carrier's knowledge. Upon receipt of a release allegedly signed by plaintiff, the insurance company gave the attorney a draft payable to the client and her attorney. The attorney forged his client's signature and cashed the draft. A year later plaintiff became aware of the settlement and attempted to recover the money from the attorney. When these efforts proved unsuccessful a suit was instituted against the insurance company.
The Supreme Court of California held that by bringing the suit plaintiff had ratified the settlement agreement. Echoing Thermo Contracting Corp. v. Bank of N.J., supra, the court stated that "a principal is not allowed to ratify the unauthorized acts of an agent to the extent that they are beneficial, and disavow them to the extent that they are damaging. If a principal ratifies part of a transaction, he is deemed to ratify the whole of it." 97 Cal. Rptr. at 311, 488 P.2d at 641. Since "the principal has the power to approve the transaction only as it, in fact, occurred," id., ratification of the settlement necessarily entailed ratification of the method of payment.
The plaintiff there argued that the controversy was governed exclusively by law peculiar to negotiable instruments. In particular, *381 plaintiff placed reliance upon two provisions of the California negotiable instruments law. Initially, under what is the equivalent of N.J.S.A. 12A:3-116(b), it was pointed out that an instrument payable to the order of two persons jointly can only be negotiated by joint action. Secondly, plaintiff cited the principle encapsulated in N.J.S.A. 12A:3-404 that an "unauthorized signature is wholly inoperative as that of the person whose name is signed * * *." Reading these sections together, plaintiff argued that the underlying obligation cannot be held discharged when payment is made by check to an agent who forges his principal's signature and absconds with the proceeds. To the contrary, defendant argued that the rule enunciated in the Restatement, Agency 2d, § 178(2), supra, was controlling. The court agreed with defendant and held that "the rules of negotiable instruments should not be considered paramount in the present context." 97 Cal. Rptr. at 316, 488 P.2d at 644. Accord, Hutzler v. Hertz Corp., 39 N.Y.2d 209, 383 N.Y.S.2d 266, 347 N.E.2d 627 (1976).
The Uniform Commercial Code as enacted in New Jersey is to be interpreted by taking into consideration concepts developed in other areas of the law. For example, N.J.S.A. 12A:1-103 provides that "[u]nless displaced by the particular provisions of this Act, the principles of law and equity, including * * * the law relative to * * * principal and agent, * * * shall supplement is provisions." N.J.S.A. 12A:3-404, the particular provision of the act applicable here, qualifies its general principle concerning the effect of an unauthorized signature with the phrase, "unless he [the principal] ratifies it or is precluded from denying it." In these circumstances the rule set forth in the Restatement, Agency 2d, supplements the provisions of the Uniform Commercial Code and thereby precludes Clarkson from denying his signature in the context of a suit directed against the debtor, Selected Risks. See Hutzler v. Hertz Corp., supra 383 N.Y.S.2d at 270, 347 N.E.2d at 632.
*382 It follows from this reasoning that summary judgment must be entered against plaintiff as to the count of the complaint that asserts a right to relief based upon Selected Risks' breach of the settlement contract. As between these parties, the check issued to Tishgart and forged by Wolfe constitutes payment in full. Likewise, the negligence count of the complaint directed at Selected Risks must fall because the institution of the suit ratified the method of payment. Since in the eyes of the law plaintiff authorized payment to the agent, he cannot be heard to complain that payment by Selected Risks was an act of negligence.
N.J.S.A. 12A:4-401(1) permits a drawee bank to charge against its customer's account any check that is "properly payable" from that account. A check paid over a forged endorsement is not one properly payable from the drawer's account. See New Jersey Study Comment § 1, N.J.S.A. 12A:4-207; White & Summers, Uniform Commercial Code, § 17-3 at 558-59 (1972). This circumstance permitted the earlier entry of a summary judgment in favor of the customer, Selected Risks, against its drawee, Newton. No timely opposition to this motion was filed by Newton. As subrogee to Selected Risks' claim against the drawee bank, Clarkson is entitled to the benefit of this judgment. Restatement, Agency 2d, § 178(2) (1958). The fact that Selected Risks has no liability to Clarkson does not affect his right of subrogation or the validity of the summary judgment.
This disposition will most probably render moot Clarkson's alternative claim of conversion brought against Newton in accordance with N.J.S.A. 12A:3-419(1)(c). However, summary judgment must be denied on this claim. N.J.S.A. 12A:3-406 supplies Newton with a potentially valid defense. This section precludes any person whose own negligence has substantially contributed to the making of an unauthorized signature from asserting a conversion claim against a drawee bank when that bank has paid the item in good faith and in accordance with the *383 reasonable commercial standards of its business. The facts raise no challenge to the good faith of Newton in paying the check but are insufficient to support a decision on the question of Clarkson's negligence. R. 4:46-2.
By virtue of N.J.S.A. 12A:4-102(2) the "liability of a bank for action * * * with respect to any item handled by it for the purposes of * * * collection is governed by the law of the place where the bank is located." Continental is located in Pennsylvania. Since the applicable statutory law of that jurisdiction does not differ in any respect from that of New Jersey, reference will be made to the New Jersey codification of the Uniform Commercial Code for the sake of convenience. The corresponding Pennsylvania provisions can be found at 12A P.S. §§ 4-207 and 406. In addition, whenever possible, citation will be made to the authorities of both jurisdictions which, with respect to the points discussed below, are in complete agreement.
The transfer of the check from the collecting bank, Continental, to the payor bank, Newton, carried with it certain warranties imposed both by law, see N.J.S.A. 12A:4-207(1), and by contract, i.e., Continental's "P.E.G." endorsement. Newton now asserts that the former warranty was breached because one of the necessary endorsements was forged by Wolfe. In resolving this aspect of the matter, the applicability of the warranty will be briefly examined and then the defense to its breach raised by Continental will be considered.
The New Jersey Study Comment appended to N.J.S.A. 12A:4-207 indicates that the warranty created in subsection (1)(a) is coextensive with that created by a "P.E.G." endorsement. Accord, Uniform Commercial Code, Comment § 2; 12A P.S. § 4-207. According to the statute, each collecting bank that has obtained payment of an item warrants to the payor bank that has paid an item in good faith that it either has good title or is authorized to obtain payment on behalf of someone *384 that does have good title. The question of good faith is not raised by the facts presented here. A forged endorsement breaches this warranty because it breaks the chain of good title to the collecting bank. Similarly, by endorsing a check with the abbreviation for prior endorsements guaranteed a collecting bank accepts the risk of any forged endorsement. See Standard Accident Ins. Co. v. Pellecchia, 15 N.J. 162, 189 (1954). Thus, absent a valid defense, Continental rather than Newton must bear the cost of the forged endorsement.
Continental's defense to Newton's breach of warranty claim is based upon N.J.S.A. 12A:4-406(5). This subsection provides:
If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim. [Emphasis supplied]
As previously mentioned, Newton failed to file a timely response to Selected Risks' motion for summary judgment. Continental claims that by so doing Newton waived two valid defenses that could have been asserted in opposition to the motion. First, Continental posits that Newton could have asserted that Wolfe's status as an attorney garbed him with apparent authority to endorse his client's name on the check. But see, 7 C.J.S. Attorney and Client § 104 at 928 (1937). Secondly, according to Continental, Newton could have argued that Clarkson ratified the forgery through his own inaction.
The problem with this contention, which Continental recognizes, is that these defenses are nowhere specified in N.J.S.A. 12A:4-406. In general, the defenses provided by this section stem from the obligation imposed upon a customer by subsection (1) to promptly examine items in order to determine whether his signature has been forged or the item itself altered in any respect. The customer is not obliged to examine endorsements. *385 See New Jersey Study Comment § 1, N.J.S.A. 12A:4-406. The only defense provided with regard to a forged endorsement is a requirement that any claim based upon such endorsement must be made within three years from the time this item is made available to the customer. See N.J.S.A. 12A:4-406(4). This defense was not available to Newton.
The very language of the subsection as well as the commentary that follows it clearly indicates that the protection afforded collecting banks by subsection (5) is only triggered by a payor bank's waiver of or refusal to raise a valid defense provided by one of the other subsections of N.J.S.A. 12A:4-406. See Uniform Commercial Code Comment § 7, N.J.S.A. 12A:406; 12A P.S. § 4-406. The Alabama Court of Civil Appeals has suggested the following as the justification for this limitation:
As we see it, this section provides a defense by a bank against its customer, which would not be available to any other bank or party involved in the particular transaction. For this reason, it can be seen why a payor bank who has such defense to a customer's claim, should not be allowed to fail to assert it, credit the customer's account and proceed against intervening holders in due course upon their endorsements.
East Gadsden Bank v. First City National Bank of Gadsden, 50 Ala.App. 576, 281 So.2d 431, 435 (1973); see Society National Bank of Cleveland v. Capital National Bank, 30 Ohio App.2d 1, 281 N.E.2d 563, 566-67 (1972).
Continental, however, points to language contained in a New Jersey case which does support the contrary proposition. In Life Ins. Co. v. Snyder, 141 N.J. Super. 539, 544 (Cty.Ct. 1976), it is said: "If the bank fails to assert a valid defense against its customer, the bank may not assert against the collecting bank or any other prior party presenting or transferring the check a claim which is based on a forged endorsement. N.J.S.A. 12A:4-406(5)." The precise issue before the court was whether a drawer, as a third-party beneficiary, could assert the warranties of its drawee/payor bank under N.J.S.A. 12A:4-207(1) and (2) *386 against a collecting bank. In support of its position the drawer argued that such an assertion would circumvent the circuity of action that results when the drawer sues the drawee who had paid a check over a forged endorsement, who then as payor bank sues the collecting bank for breach of warranty. The court rejected this premise as unsound because it overlooked the fact that the drawee might have a defense to its customer's claim. It was in the course of reaching this conclusion that the foregoing statement was made. Given the precise issue that was before the court, the statement might be labeled dictum. Moreover, it is apparent that the attention of that court was not focused on the exact language of N.J.S.A. 12A:4-406(5). This court, faced with the task of construing the statute of a sister state and in any event not being bound by the view of a coordinate court, reaches a different conclusion. The other case relied upon by Continental, Canadian Imperial Bank of Commerce v. Federal Reserve Bank, 64 Misc.2d 959, 316 N.Y.S.2d 507 (1970), is not persuasive.
Perhaps anticipating that its reliance on N.J.S.A. 12A:4-406(5) would be found wanting, Continental asserts as a fallback position that its liability should be discharged to some extent because of Newton's delay in informing it of the breach of warranty claim. Under N.J.S.A. 12A:4-207(4), unless such a claim was made by Newton within a reasonable time after it learned of the breach, Continental must be discharged "to the extent of any loss caused by the delay in making claim." The burden of establishing the amount of the loss falls upon Continental. See Phoenix Assur. Co. v. Davis, 126 N.J. Super. 379, 392 (Law Div. 1974).
On or about December 21, 1977 Newton received a letter from Arthur J. Marion, Esquire, which stated with regard to the check: "Unfortunately, the signatures of both payees were forged, the draft was honored and the actual payees never received these funds." Newton immediately contacted Selected *387 Risks, which advised that it was in the process of resolving the problem. Newton decided to take no further action. Later, Marion wrote a second letter to Newton about the forged check. The record does not indicate when this communication took place but it prompted Newton to obtain the check from Selected Risks for examination. By letter dated February 3, 1977 a copy of the check was sent to Marion for presentation to the payees, who then were to submit affidavits swearing that they had not endorsed the check or received any of its proceeds. The affidavits were received with a letter dated February 22, 1978, and Continental was notified of Newton's claim by a letter dated February 24, 1978. Newton asserts that it was not until it received the affidavits that it was aware of Continental's role as collecting bank.
The question of what constitutes a reasonable time is a question of fact that can only be answered by taking into consideration the circumstances of the particular case. Phoenix Assur. Co. v. Davis, supra at 391. Newton learned of the forgery and apparent breach of warranty from Marion's first letter. It failed to launch a prompt inquiry to determine the identity of the collecting banks and instead relied upon the assurances it received from Selected Risks. Its request for verification prior to taking action was not unreasonable, but delaying that request for more than a month was unacceptable. Passage of almost two months time between the date of awareness on Newton's part and notification to Continental was therefore unreasonable.
The only loss attributable to this delay is Continental's alleged right of set-off against the escrow account maintained by Wolfe at the bank. Although the account remained open until December 1977, it contained only insignificant funds after September of that year. Newton, at the earliest, was aware of a potential claim against some as yet unidentified collecting bank on December 21, 1977. By this time the account either had been closed or contained only a negligible amount of *388 money. Moreover, whatever funds were in this account were held in trust by Wolfe for various clients. A bank's set-off rights against a trustee as an individual do not extend to funds held by him in trust. See American Lumberman's Mut. Cas. Co. v. Bradley Constr. Co., 127 N.J. Eq. 500, 504 (Ch. 1940), aff'd 129 N.J. Eq. 278 (E & A 1941); Hudson United Bank v. House of Supreme, Inc., 149 N.J. Super. 153 (Ch.Div. 1977); Sherts v. Fulton National Bank, 342 Pa. 337, 21 A.2d 18 (1941); Ryan Brothers v. Curwensville State Bank, 382 Pa. 248, 114 A.2d 178 (1955). Consequently, Continental has failed to establish that if suffered any loss as a result of Newton's unreasonable delay.
A third-party complaint was served upon Tishgart by mail in accordance with R. 4:4-4(e). In this complaint Continental alleged that as a proximate result of Tishgart's negligent conduct, either as Clarkson's attorney or as copayee of the check, damage was suffered by Continental for which Tishgart should be held responsible. In the alternative, Continental asserted that Tishgart was in breach of his endorsement contract. Tishgart now moves to dismiss the complaint on the ground that the court does not have jurisdiction over his person.
R. 4:4-4(e) allows out-of-state service "to the uttermost limits permitted by the United States Constitution." Avedel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207, 209 (1971). These limits are generally recognized as being set by the decisions of the United State Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1954), and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). See, e.g., Avedel Corp. v. Mecure, supra; Gelineau v. New York Univ. Hospital, 375 F. Supp. 661 (D.N.J. 1974). In International Shoe Co. v. Washington, supra 326 U.S. 310, 66 S.Ct. at 158, the Supreme Court held that "due process requires only that in order to subject a defendant to judgment in personam, if he be not present in the [jurisdiction] of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of *389 fair play and substantial justice.'" With more particularity, the Supreme Court indicated in McGee that consistent with the Due Process Clause a state could obtain personal jurisdiction over a nonresident when the cause of action arose from a transaction to which the nonresident was a party and that transaction either was entered into within, see Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958), or bore a "substantial connection" to, the forum. Whether New Jersey views McGee as an example of International Shoe or as an extension thereof is not clear. Compare J.W. Sparks & Co. v. Gallos, 47 N.J. 295, 300 (1966), with Avedel Corp. v. Mecure, supra 58 N.J. at 268-69, and Gelineau v. New York Univ. Hospital, supra at 664-665. Resolution of this motion to dismiss can be reached without directly confronting this issue.
Here, Tishgart or Wolfe, whose actions will be treated as having the same significance as Tishgart for jurisdictional purposes since Tishgart was acting for Wolfe, negotiated a settlement of a negligence claim after suit had been instituted in a Pennsylvania court. Both plaintiff and defendant in this action were residents of Pennsylvania. The settlement was arrived at after negotiations were undertaken with Selected Risks, Wolfe and possibly Tishgart in Pennsylvania. A settlement was reached and the check was issued by Selected Risks on behalf of its insured. Consequently, Tishgart's only contacts with this jurisdiction stem from the circumstances that the settlement was made with an insurance company located in New Jersey, which issued its check drawn on a New Jersey bank.
All of the alleged negligent acts of Tishgart took place in Pennsylvania and the party suing him is a Pennsylvania corporation. That Tishgart would not have been in possession of the check but for its issuance by a New Jersey corporation is too tenuous a basis for finding that he can be sued in this jurisdiction for conduct that occurred elsewhere. Acceptance of Continental's proposition that Tishgart's role in the settlement *390 of the Pennsylvania litigation satisfies the minimum contacts test of International Shoe would mean that every attorney who settles a case for a client with an out-of-state insurance company thereby runs the risk of having to defend against various claims in the courts of that jurisdiction. That consequence "offends traditional notions of fair play and substantial justice."
The endorsement contract provides no stronger foundation for this court's assumption of personal jurisdiction over Tishgart. The contractual relationship relied upon exists between a Pennsylvania citizen and a Pennsylvania corporation. Tishgart's endorsement as well as the negotiation to Continental by which the relationship came into existence both took place in Pennsylvania. This contract neither bears a substantial connection to nor was entered into within this jurisdiction.
On the basis of these analyses, it must be concluded that Selected Risk is not liable to Clarkson who is entitled, however, to recover from Newton; Newton recovers from Continental and the latter's suit against Tishgart is dismissed. No costs.