**Darleen M. SMITH, Executrix of the Estate of David C. Smith, Deceased**

v.

**DELAWARE VALLEY AUTO SPRING CO., et al.**

**Civ. A. No. 84–4519.**

United States District Court, E.D. Pennsylvania.

Sept. 4, 1986.

George F. Schoener, Jr., Philadelphia, Pa., for plaintiff.

Joseph H. Foster, Philadelphia, Pa., for Delaware Valley Auto Spring Co.

John Churchman Smith, Media, Pa., for S & G Enterprises.

John C. McNamara, Philadelphia, Pa., for Merion Spring.

Sidney Wickenhaver, Philadelphia, Pa., for Mack Truck.

Albert Bricklin, Philadelphia, Pa., for Fruehauf Corp.

Richard Kraemer, Philadelphia, Pa., for Tiona Betts.

## MEMORANDUM

JOSEPH S. LORD, III, Senior District Judge.

Defendants in this wrongful death and survival action have moved to enforce a settlement agreement which they allegedly entered into with plaintiff Darleen Smith (hereinafter referred to as "plaintiff" to distinguish her from attorney John Churchman Smith) on July 2, 1985. On April 28, 1986, I held an evidentiary hearing on defendants' motion. For the reasons that follow, the motion will be denied.

Most of the relevant facts are not in dispute. Settlement negotiations began in May, 1985. Plaintiff was represented by Robert White, who at that time was her attorney. The defendants were represented collectively by one defense attorney, an appointed liaison, who conducted settlement negotiations on their behalf.

The series of events directly pertinent to defendants' motion began on June 2, 1985. On that date, White discussed settlement with John Churchman Smith, the attorney for defendant S & G Enterprises, Inc., who was at that time defendants' appointed liaison. Smith asked White to find out whether plaintiff would settle her case for $750,000 if some or all of the defendants were able to raise that amount. When he made this inquiry, Smith was contemplating the creation of a guaranteed settlement fund, which would be financed by two or more of the defendants. White and Smith understood that if plaintiff agreed to a settlement of $750,000, she would sign a general release, but that the defendants who funded the settlement would retain the right to proceed against the nonfunding defendants and one another for indemnity and/or contribution. Before undertaking to get commitments from other defendants and/or their insurance carriers to finance a $750,000 guaranteed settlement fund, Smith wanted to know whether plaintiff would settle her case for $750,000.

On June 3, White called plaintiff at work to discuss whether she would settle her case for $750,000. At the outset of the conversation, White informed plaintiff that if the settlement efforts then underway were unsuccessful, he and his firm would have to withdraw from her representation, because a client of the firm, Fruehauf Corporation, had been joined as a third-party defendant in the action, and the firm's ad-

ministrative committee had decided to honor Fruehauf's request that the firm not continue representing plaintiff in the lawsuit. During their conversation, plaintiff asked White whether $750,000 was the most she could get for her case, and White answered that in his opinion it was. Plaintiff and White also discussed the tax consequences of the settlement and the effect a settlement might have on her pending workmen's compensation case. White told plaintiff that he could not advise her on those matters, and suggested that she discuss them with Mr. Antonelli, who was plaintiff's attorney in the workmen's compensation case and the attorney who had referred plaintiff's wrongful death and survival action to White's law firm. As to the foregoing, the testimony of plaintiff and White did not differ in any material respect.

However, their testimony diverged as to a critical aspect of the June 3 conversation. Plaintiff testified that she did not authorize White to settle the case for $750,000. She testified that, because there were so many unanswered questions, i.e., whether she could get more than $750,000 from defendants, what the tax consequences of a settlement would be, and how a settlement would affect her pending workmen's compensation case, she and White were to get back in touch with one another before she decided whether she would be willing to accept a $750,000 settlement. In contrast, White testified that plaintiff authorized him, without exception or reservation, to accept a $750,000 settlement on her behalf.

Events after June 3, about which there is no material dispute, show that both plaintiff and White acted consistently with their divergent understandings of the June 3 conversation. On June 4, White spoke with Antonelli about the tax and workmen's compensation issues, although he did not then call plaintiff to talk about those matters, as he assumed that plaintiff would talk directly to Antonelli. On June 5, White spoke with Smith and informed him that plaintiff would accept a settlement of $750,000 if the defendants could raise that amount. On July 2, Smith informed White

that he had a guarantee of $750,000 from at least two of the defendants' insurance carriers. As of that date, both White and Smith considered plaintiff's claims settled. However, the settlement was not immediately formalized, because Smith asked White to give him time to prepare appropriate releases and to see whether he could get funding from defendants other than those who had already guaranteed the $750,000 settlement to plaintiff. On July 5, White left for a six week vacation, having arranged for another member of his firm to take care of the closing documents which he expected the defendants to send.

At the same time that Smith was attempting, based on White's representation to him, to obtain funding for a settlement, plaintiff undertook to ascertain whether $750,000 was a fair settlement of her claims. She contacted an attorney whom she knew personally, who referred her to M. Mark Mendel, whose firm presently represents her. Based on her conversations with those attorneys, she concluded that $750,000 was not an acceptable settlement. She so informed White in a letter, which was dated July 3 and received by White's law firm on July 18. During the period between plaintiff's June 3 conversation with White and his firm's July 18 receipt of her letter, and for some additional period of time thereafter, plaintiff was unaware that White had told Smith that she would accept a $750,000 settlement and that the defendants had in fact raised the $750,000, as White did not communicate with plaintiff at any time after June 3 about the settlement of her case. Plaintiff never received or executed a release, nor did she receive or accept any money from defendants in settlement of her claim. By letter dated September 11, 1985, plaintiff informed White that she had terminated his services.

I find that both plaintiff and White were credible witnesses. Based on the foregoing, I conclude that there was no enforceable settlement reached in this case.

█ The applicable law is either that of Pennsylvania or New Jersey. Both plain-

tiff and defendants assert that Pennsylvania and New Jersey law on enforcement of settlements is identical. I disagree with this assertion, as Pennsylvania law clearly provides that an attorney must have express authority to settle litigation, *see, e.g., Rothman v. Fillette*, 503 Pa. 259, 264, 469 A.2d 543, 545 (1983), while New Jersey would enforce a settlement where the attorney had either actual or apparent authority to settle. *See United States Plywood Corp. v. Neidlinger*, 41 N.J. 66, 73–74, 194 A.2d 730, 734 (1963) (per curiam). However, I conclude that this difference is of no moment, as I find that defendants have not established that White had either express, implied, or apparent authority to enter into a settlement on plaintiff's behalf.

It is impossible to reconcile the contradictory testimony of plaintiff and White as to whether, during their June 3 conversation, plaintiff gave White the authority to settle her lawsuit for $750,000. I cannot determine whether the requisite authority existed by interpreting the language used by plaintiff in discussing the scope of White's authority, if any, because neither plaintiff nor White testified as to exactly what was said. Although each testified as to his or her belief that authority was or was not given, neither expressly identified the factual basis, *i.e.*, the precise statements made by plaintiff, for such belief. *Cf. Edwards v. Born, Inc.*, 792 F.2d 387, 391 (3d Cir.1986) (district court must consider the reasonable inferences that an attorney may draw from his client's words to determine whether implied authority exists).[1] Moreover, the testimony of both White and plaintiff as to his or her understanding of the June 3 conversation was credible and consistent with the actions of each after June 3. Neither witness' testimony was impeached by cross-examination. Notwithstanding innuendo as to possible bias in each witness' testimony, the evidence reveals nothing more than that White and plaintiff reached different understandings as to the authority, if any, given to White by plaintiff in their June 3 conversation.

■ An attorney-client relationship does not, without more, confer upon the attorney the authority to settle his client's case. *See, e.g., Archbishop v. Karlak*, 450 Pa. 535, 540, 299 A.2d 294, 297 (1973); *Clarkson v. Selected Risks Insurance Co.*, 170 N.J. Super. 373, 379, 406 A.2d 494, 497 (Law Div.1979).[2] There is no evidence that White had apparent authority to settle plaintiff's case, as there is no evidence of any representation by plaintiff to defendants which may have led defendants to believe that plaintiff had given White the authority to enter into a settlement agreement on her behalf. *See Edwards*, 792 F.2d at 390–91 (defining apparent authority); *Neidlinger*, 41 N.J. at 73–74, 194 A.2d at 374 (finding that the plaintiff's actions may have created apparent authority).

■ As to White's actual, *i.e.*, express or implied, authority, I conclude that the evidence is in equipoise. Therefore, the determination of whether White had the actual authority to settle plaintiff's case depends on whether plaintiff or defendants bear the burden of proof. Neither plaintiff nor defendants have cited any Pennsylvania or New Jersey cases addressing the issue of who bears the burden of proof when an attorney's authority to settle is challenged

1. In her response to defendants' motion to enforce settlement agreement, plaintiff says that, during the June 3 conversation, she stated to White that "she would consider accepting $750,000.00 if there was no chance of recovering anything more and if she was advised of the contribution among defendants." For reasons that are not clear to me, neither plaintiff nor defendants elicited testimony at the evidentiary hearing concerning that statement. However, if that statement was the basis upon which White concluded that he had authority to settle plaintiff's case, I find that it was not reasonable for White so to conclude without discussing with plaintiff at some time after June 3 whether she would in fact accept such a settlement as opposed to merely considering doing so.

2. Numerous cases hold that a client who has not authorized a settlement may nonetheless be bound by it if he ratifies the settlement by words or conduct. *See, e.g., Archbishop*, 450 Pa. at 541 & n. 3, 299 A.2d at 297 & n. 3; *Clarkson*, 170 N.J.Super. at 379, 406 A.2d at 497. However, the evidence in this case does not even suggest, let alone establish, that plaintiff ratified the settlement agreement entered into by White.

by his client, and I have found none.[3] In the absence of any controlling authority, I conclude that, because the attorney-client relationship is one of principal and agent, I should apply the general principles of agency law. *See Edwards*, 792 F.2d at 389 (in determining whether an attorney may bind his client to an agreement, courts should look both to judicial precedent and agency principles). In both Pennsylvania and New Jersey, the burden of proving agency is on the party asserting it. *See, e.g., Scott v. Purcell*, 490 Pa. 109, 117 n. 8, 415 A.2d 56, 60 n. 8 (1980); *N. Rothenberg & Son, Inc. v. Nako*, 49 N.J.Super. 372, 383, 139 A.2d 783, 789 (App.Div.1958). Here, defendants are asserting that plaintiff's attorney had the requisite authority to settle her lawsuit. Because the evidence is in equipoise, they have not met their burden of proof.

Based on the foregoing, which constitutes my findings of fact and conclusions of law, defendants' motion will be denied. An appropriate order will be entered.

---

**3.** The Third Circuit, interpreting Virgin Islands and the common law, has stated that once a settlement is entered, a client who wishes to set it aside must produce proof that his attorney did not have the right to consent to its entry. *Edwards*, 792 F.2d at 390. In making that statement, the *Edwards* court was setting forth general principles, not addressing the issue of evidentiary burdens. I interpret its statement as setting forth, at most, a burden of production, for to interpret it as allocating the burden of proof would fly in the face of well-settled principles of agency law, and therefore would read too much into what appears to be a broad policy statement rather than a holding as to who bears the burden of proof. To the extent that plaintiff may have a burden of production on this issue under Pennsylvania and/or New Jersey law, I conclude that she has produced ample evidence to meet that burden.