**KEITHLEY EDWARDS and EDITH EDWARDS, Plaintiffs**

**v.**

**BORN, INC., et al., Defendants**

Civil No. 1982/283

District Court of the Virgin Islands

Div. of St. Croix

May 13, 1985

Mark L. Milligan, Esq., Darryl Donohue, Esq., Christiansted, St. Croix, V.I., *for plaintiffs*

R. Eric Moore, Esq., Christiansted, St. Croix, V.I., *for defendant Born, Inc.*

Britain H. Bryant, Esq., Christiansted, St. Croix, V.I., *for defendant St. Croix Petrochemical, Inc.*

James L. Hymes, III, Esq., St. Thomas, V.I., *for defendant Fluor Engineers & Constructors, Inc.*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

On behalf of their respective clients, the attorneys in this personal injury case reached a settlement during a pre-trial conference on December 12, 1984. The plaintiffs' attorney accepted an offer made jointly by the defendants' counsel of $150,000 in full settlement of all plaintiffs' claims. Each attorney stated that he had the authority to act on behalf of his client.

Shortly thereafter, plaintiffs repudiated the settlement and asserted that their attorney had no authority to enter into it. All three defendants moved to enforce the settlement. The plaintiffs' attorney moved to withdraw due to irreconcilable differences; the motion was granted. On February 27, 1985, the motion to enforce the settlement was heard. Plaintiffs' new legal representative, listed above, attended and evidence was taken on the issue of the express authority or apparent authority of plaintiffs' original attorney to settle the case.

The issue now before the Court is whether the original attorney possessed the express authority to settle his clients' case for $150,000. If he did not, we must decide whether the attorney had apparent authority to commit his clients to such a settlement and if so, whether it is sufficient to bind the plaintiffs.

## I. FACTS

Keithley Edwards was employed at Hess Virgin Islands Corporation on September 24, 1982 when he was injured while working on a boiler supplied by Born, Inc., installed by Fluor Engineers & Constructors, Inc. and owned by St. Croix Petrochemical Corporation. He filed this action against all three companies, and later his wife was added as party plaintiff with a loss of consortium claim. Both were represented by the same attorney.

Full discovery took place among the parties. Mr. Edwards' essential claim of injuries concerned his back, a partial loss of the sense of taste and complete loss of the sense of smell. Since he did not lose a great deal of time from work, the issue of lost wages past, or future earning capacity, was not a major consideration in the monetary calculation of his claim.

A trial date was set for the period commencing January 8, 1985, and several weeks prior to that time, the Court scheduled an informal pre-trial conference among the attorneys to inquire into the possibility of settlement. This was in addition to the formal pre-trial conference conducted by the magistrate.

The Court followed its standard procedure in the settlement conference. The attorneys met together with the Court to discuss the claims and defenses. The plaintiffs themselves were not present. The Court met separately with plaintiffs' counsel, and then with defendants' counsel. The purpose was to seek a narrowing of the differences to a point where a settlement offer could be made which would be mutually acceptable.

In the instant situation, the narrowing of positions resulted in an offer by defendants' counsel to plaintiffs' counsel within the range of what the latter had informed the Court was necessary to settle all of plaintiffs' claims. After the offer was made and accepted in chambers, a court reporter was called in and the offer and acceptance was repeated. The transcript was made a part of this record.

One of the defendants' counsel, speaking for all three of them, when asked by the Court whether he had an offer of settlement, responded:

"The offer is $150,000 in full settlement of all claims."

To which the Court inquired:

"And that is all claims of all plaintiffs? Plaintiff will pay his own compensation claim out of the proceeds; is that correct?"

The attorney responded:

"That is correct."

All defendants' counsel placed on the record their authority to make this combined offer. The Court then turned to plaintiffs' counsel who stated:

"I accept that offer. I am authorized to accept it on behalf of the plaintiffs."

Defense counsel then ordered settlement drafts totaling $150,000 which were delivered to plaintiffs' attorney. At that point, the plaintiffs rejected the checks, claiming that they had not given their attorney authority to settle their claims for $150,000. The attorney moved to withdraw and plaintiffs retained their present counsel.

At the hearing, plaintiffs' original attorney testified under oath that plaintiffs told him they would rely on his good judgment and experience as to the amount of the settlement. No figures were discussed. The plaintiffs filed affidavits indicating that at no time, orally or in writing, did they authorize the attorney to settle their claims and that the question of a settlement demand was never discussed. Both plaintiffs indicated that they had no idea a settlement conference was to take place. Mr. Edwards asserted that he was in Antigua at the time it was scheduled. The plaintiffs further swore that the first they learned of any settlement was after the conference, when they were notified by the attorney.

## II. DISCUSSION

### A. *Public Policy Behind Settlements*

■ The Third Circuit Court of Appeals has consistently held that "[a]n agreement to settle a law suit is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970). Accord Good v. Pa. R.R. Co., 384 F.2d 989 (3d Cir. 1967); Kelly v. Greer, 365 F.2d 669 (3d Cir. 1966); Main Line Theatres, Inc. v. Paramount Film Distribution Corp., 298 F.2d 801 (3d Cir. 1962). Other courts have ruled that voluntary settlements are highly favored and, when reached validly, cannot be repudiated. See, e.g. Aro Corp. v. Allied Witan Co., 531 F.2d 1368 (6th Cir. 1976); D. H. Overmeyer Co. v. Loflin, 440 F.2d 1213 (5th Cir. 1971); Bergstrom v. Sears, Roebuck & Co., 532 F.Supp. 923 (D. Minn. 1982).

Underlying the judicial preference to enforce settlements are public policy considerations. Most commonly cited is the avoidance of costly and time-consuming litigation. But, in the case of settlements in which the court is actively involved, such as the one at issue, the integrity of the court and the management of its calendar are important factors.

### B. *Express Authority to Settle*

■ It is a well accepted principle that an attorney has no power to settle his client's case nor to consent to a dismissal upon the mer-

its without express authority. United States v. Beebe, 180 U.S. 343 (1901); Bradford Exchange v. The Treins Exchange, 600 F.2d 99 (7th Cir. 1979); Associates Discount Co. v. Goldman, 524 F.2d 1051 (3d Cir. 1975); Thomas v. Colorado Trust Deed Funds, Inc., 366 F.2d 136 (10th Cir. 1966); In re Gsand, 153 F.2d 1001 (3d Cir. 1946); Griego v. Kokkeler, 543 P.2d 729 (Colo. Ct. App. 1975). Express authority is the authority that the principal, the client, expressly or explicitly gives to the agent, the attorney. United States v. Martinez, 613 F.2d 473, 481 (3d Cir. 1980); Downing v. Fortuna Bay Estates, Inc., 17 V.I. 20, 26 (D.V.I. 1980); see also Restatement (Second) of Agency § 7 comment c (1958).

 It is clear from the plaintiffs' affidavits as well as the testimony of their original attorney that by no acts of theirs was express authority conferred on the attorney to settle plaintiffs' claims. When an attorney is told by his or her client that the client relies on the attorney's judgment and experience in these matters, the attorney is not relieved from further consultation with the client when settlement negotiations reach specific dollar amounts.

According to the ABA Code of Professional Responsibility a lawyer is entitled to make decisions of his or her own only in those areas "not affecting the merits of the cause or substantially prejudicing the rights of a client." It is for the client to decide whether or not to accept a settlement offer. Model Code of Professional Responsibility EC 7-7 (1983).

C. *Apparent Authority*

Notwithstanding the lack of express settlement authority, we must discern whether plaintiffs' attorney had apparent authority to settle the action. In order to determine whether the settlement should be set aside, we must also decide whether apparent authority is sufficient to bind the client.

 Under the law of agency, apparent authority is defined as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Restatement (Second) of Agency § 8 (1958) (applicable to the Virgin Islands by virtue of 1 V.I.C. § 4 (1967)).

Certain courts hold that apparent authority is sufficient to bind a client to a settlement entered into by his or her attorney. In Glazer v. J. C. Bradford & Co., 616 F.2d 167 (5th Cir. 1980), the court found that "a client is bound by his attorney's agreement to settle a law-

suit, even though the attorney may not have had express authority to settle, if the opposing party was unaware of any limitation on the attorney's apparent authority." Id. at 168 (Georgia law).

Similarly, in International Telemeter Corp. v. Teleprompter Corp., 592 F.2d 49, 55 (2d Cir. 1979), the court held that as long as there was no reason to believe the attorney was exceeding the scope of his apparent authority in settlement negotiations, the opposing party was entitled to rely on it.

The reasoning behind these rulings was stated in Bergstrom v. Sears, Roebuck & Co., 532 F.Supp. 923 (D. Minn. 1982). The court found that "where one of two innocent parties must suffer from the wrongful act of another, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the wrong and cause the loss." Id. at 933 (citing 3 Am. Jur. 2d Agency § 76 (1962)).

Thus, although the settlement should not be set aside, the client would have a remedy against his or her attorney. See, e.g. Parker v. Board of Trustees of Southern Illinois Univ., 220 N.E.2d 258, 260 (Ill. 1966); Cohen v. Goldman, 132 A.2d 414, 417 (R.I. 1957); Hallock v. State of New York, 485 N.Y.S. 2d 510 (Dec. 27, 1984); see generally R. Mallen & V. Levit, Legal Malpractice § 580 at 727 (2d ed. 1981).

There is, however, a distinct minority view, relied on by the plaintiffs, which states that an attorney has no authority, to settle or compromise an action without express permission from his or her client. See Harrop v. Western Airlines, Inc., 550 F.2d 1143 (9th Cir. 1977) (California law); United States v. State of Texas, 523 F.Supp. 703 (E.D. Tex. 1981); Daley v. Bright, 413 F.Supp. 29 (E.D. Pa. 1975) (Pennsylvania law); Rothman v. Fillette, 451 A.2d 225 (Pa. Super. Ct. 1982).

■ We believe that the majority position instructs us, public policy compels us, and the special circumstances of legal practice in the Virgin Islands requires us to uphold settlements entered into by an attorney clothed with apparent authority. Of course, if the settlement is so unfair as to put the third party on notice of fraud, collusion, mistake or accident, it will be set aside.

If the settlement conference is to continue as a viable tool used by the Court to settle cases, then settlements such as the one entered into in this case must bind the parties. This is especially true in the Virgin Islands legal community where, in the Division of St. Croix,

there are less than 100 practicing attorneys constantly interacting. Succinctly stated, to set aside this settlement stipulation

'invites the destruction of the process of open court settlements, for every such settlement would be liable to subsequent rescission by the simple expedient of a litigant's self-serving assertion, joined in by his attorney and previously uncommunicated to either the court or others involved in the settlement, that the litigant had limited his attorney's authority.'

Hallock, supra, at ––– (citing 98 A.D.2d 856, 858–859 (Mahoney, J. dissenting)).

■ The dispositive question, then, is whether plaintiffs' original attorney had apparent authority to settle the plaintiffs' claim. The mere retention of an attorney does not bestow apparent authority to settle or compromise a client's cause of action. See, e.g., Luis C. Forteza e Hijos, Inc. v. Mills, 534 F.2d 415, 418 (1st Cir. 1976); Hayes v. Eagle-Picher Industries, Inc., 513 F.2d 892, 893 (10th Cir. 1975); Sockolof v. Eden Point North Condominium, 421 So.2d 716, 719 (Fla. Dist. Ct. App. 1982); Rothman v. Fillette, 451 A.2d 225, 227–28 (Pa. Super. Ct. 1982); Annot., 30 A.L.R. 2d 944 (1953).

According to the Restatement (Second) of Agency § 27 (1958):

apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

See Amritt v. Paragon Homes, Inc., 9 V.I. 570, 573, 474 F.2d 1251, 1252 (3d Cir. 1973); Leader v. Merchant's Market, Inc., 1985 St. T. Supp. –––, ––– F.Supp. ––– (D.V.I. Feb. 7, 1985); Downing v. Fortuna Bay Estates, 17 V.I. 20, 26 (Terr. Ct. 1980).

Because the agent, in this instance the attorney, cannot clothe himself with apparent authority, we must examine the representations made by the principal, the plaintiffs, to the third party, the defendants' counsel. These representations may be made directly, or through authorized statements of the agent, from documents or other indicia of authority given by the principal to the agent, or from third persons who have heard of the agent's authority through authorized channels. Restatement (Second) of Agency § 27 comment a (1958).

■ It is justifiable for third persons to rely on an agent's apparent authority when the principal puts an agent into, or knowingly

392

permits him or her to occupy, a position in which, according to the ordinary habits of persons in the locality or profession, it is usual for the agent to have such authority, unless there is a reason to know otherwise. Restatement (Second) of Agency § 49 comment c (1958).

In this case the complaint was filed on December 10, 1982. Plaintiffs were represented from the outset by the same attorney. When interrogatories were sent from the defense to plaintiffs' counsel requiring the personal signature of Keithley Edwards on the answers, such signed answers were returned via the plaintiffs' attorney as a matter of course. When other documents and medical data of Keithley Edwards were requested, they were produced via the plaintiffs' attorney. When a deposition of the plaintiff was noticed to his attorney, Keithley Edwards promptly appeared. Two separate pre-trial orders were entered requiring counsel to appear with settlement authority, or to have the client actually present at the pre-trial conference. Plaintiffs' attorney appeared at all conferences of this nature without his clients. Under such a situation, there is an understanding that the attorney arrives with authority to settle unless restrictions are expressly stated.

In sum, then, whenever the performance of the client was personally necessary, he acted through the attorney. Whether it was in answering interrogatories or producing documents, or showing up at his own deposition, he either answered, produced, or appeared through or with his attorney.

The manifestation by plaintiff Keithley Edwards of the extent of the authority he granted to his attorney was strikingly indicated when defense counsel took his deposition. He revealed that his attorney had recommended, and he had accepted without question, the very physicians who would diagnose his injuries and treat them. These are injuries which he considered serious and possibly permanent or disabling. He also accepted without question the recommendation of his attorney as to a psychiatrist who would probe each recess of his mind, and to whom he would reveal the most personal of data. If a client would unhesitatingly place himself in the hands of his attorney to provide medical and psychiatric assistance of the most vital and personal nature, and defendants' counsel have been made aware of this form of apparent authority, can there be any doubt that the same defense counsel would consider that the client extended this authority in his attorney to matters monetary?

This Court conducted the pre-trial settlement conference. All information on potential damages was reviewed, as well as possible

contributory negligence and other defenses. We believe that the settlement was within the acceptable range, and cannot be set aside for fraud, collusion or overreaching. It was no easy task for the Court to move defense counsel up from the original offer to the amount finally agreed upon.

■ Given all that has been pointed out herein, the reliance by defendants' counsel on the appearance of authority in the hands of plaintiffs' counsel was entirely reasonable. We therefore conclude that plaintiffs' counsel was clothed with apparent authority to settle their claims.

## IV. CONCLUSION

■ We find that plaintiffs' attorney did not have express authority to settle his clients' claims. We hold, however, that the attorney did have apparent authority to do so, and this is sufficient to bind plaintiffs to the settlement reached. The defendants' motion to enforce the settlement will be granted.

## ORDER

THIS MATTER is before the Court on defendants' motion to enforce the settlement. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED:

THAT defendants' motion to enforce the settlement be and the same is hereby GRANTED.