Keithley EDWARDS

v.

BORN, INC.

**Appeal of Keithley EDWARDS and Edith Edwards.**

No. 85–3312.

United States Court of Appeals, Third Circuit.

Argued April 29, 1986.
Decided June 11, 1986.

Mark L. Milligan (argued), Christiansted, St. Croix, U.S. Virgin Islands, for appellants.

Nancy V. Young (argued), Law Offices of Britain H. Bryant, Christiansted, St. Croix, U.S. Virgin Islands, for St. Croix Petrochemical Corp.

Diane Trace Warlick (argued), R. Eric Moore, Law Office of R. Eric Moore, Christiansted, St. Croix, U.S. Virgin Islands, for Born, Inc.

James L. Hymes, III, Law Office of James L. Hymes, III, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for Fluor Engineers & Constructors, Inc.

Before HUNTER, WEIS and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Keithley Edwards and Edith Edwards appeal the district court's order enforcing a settlement agreement entered into by their attorney. Subject matter jurisdiction obtained by virtue of V.I. Code Ann. tit. 4, § 32 (Supp.1985). We have appellate jurisdiction under 28 U.S.C. § 1291 (1982). This case presents the question whether the Edwardses' attorney had the authority to compromise their suit. Because we conclude that the district court did not correctly apply the proper legal standards, we vacate and remand.

### I.

The facts in this appeal are reported in *Edwards v. Born, Inc.*, 608 F.Supp. 580 (D.V.I.1985). Keithley Edwards, an employee of Hess Oil Virgin Islands, was injured on September 24, 1982 when an access door to a refinery boiler fell on him. The boiler, which was owned by the St. Croix Petroleum Corporation, had been supplied by Born, Inc. and installed by Fluor Engineers & Constructors, Inc. Keithley filed suit against all three firms, alleging that the boiler had been supplied and installed with a defective access door and that the accident resulted in permanent injuries to his back, deprived him of his sense of taste and smell, and caused the loss of income. Keithley sought $1,000,000 in compensation for these injuries. Edith Edwards joined in the complaint, requesting $100,000 for loss of consortium. Gerald T. Groner, the Edwardses' attorney, filed the action on December 10, 1982.

In preparation for a January trial date, the magistrate scheduled a pretrial conference for December 11, 1984. The magistrate's pretrial order required the attorneys to bring to the conference, *inter alia*, either written settlement authority from their clients or the client or a representative authorized to settle the action. The Edwardses did not attend this conference.

On December 12, the parties attended a pretrial settlement conference in the district judge's chambers. The record does not reveal an order scheduling the conference; indeed, the court referred to it as "informal" as opposed to the formal pretrial conference before the magistrate. *Edwards*, 608 F.Supp. at 582. The court followed what it described as its standard settlement conference procedure, meeting first with both sides and then with each side separately to facilitate a settlement. The Edwardses were not present. This procedure succeeded in eliciting an offer from the defendants of $150,000 in settlement of all plaintiffs' claims, a figure that Groner had indicated would be acceptable. After Groner orally accepted the offer, the judge called the court reporter into chambers, and the parties reiterated the offer and acceptance for the record. Mr. Groner specifically said, "I accept the offer. I am authorized to accept it on behalf of the plaintiffs." *Id.* The court then entered a sixty-day order conditionally dismissing the suit.

When the defendants tendered the checks for the settlement amount to Groner, however, the Edwardses rejected the drafts and asserted that Groner did not have the authority to settle their claims. This development prompted an *ex parte* conference with Groner and Keithley Edwards where the court apparently attempted to assure Edwards of the propriety and adequacy of the settlement agreement. Mr. Edwards did not change his mind. The district court subsequently granted Groner's motion to withdraw, and scheduled an evidentiary hearing for February 27, 1985 on the defendants' motion to enforce the agreement.

At the hearing, the Edwardses rested on their statements in their affidavits that they had never authorized Groner to settle or to make a demand for a settlement. For his part, Groner testified that he had informed Keithley about the upcoming settlement conferences and had inquired as to the amount the Edwardses would consider in settlement of their claims. Keithley had responded that he did not have a specific figure in mind because it was Groner's job, as their attorney, to determine the proper amount. Groner told the court that he believed he had the express actual authority to settle the suit on the basis of this conversation.

The court returned an opinion and order in which it held that Groner did not have the express actual authority to settle, but that it would enforce the agreement on the basis of Groner's apparent authority. The Edwardses timely filed this appeal.

## II.

Before we examine the district court's conclusions, we must determine the source and contours of the applicable law. It is clear to us that territorial law provides the rule of decision on the question of an attorney's authority to settle his client's action when the action does not implicate rights and duties derived from federal law. This is precisely the case here. *Compare Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) (attorney's

authority to settle a matter of federal law in a maritime suit) *with Glazer v. J.C. Bradford & Co.*, 616 F.2d 167, 169 (5th Cir.1980) (state law defines attorney's authority in a diversity case). *See also General Engineering Corporation v. Martin Marietta*, 783 F.2d 352, 357 (3d Cir. 1986) (Virgin Islands law held to control the case when no substantive federal interest involved).

V.I. Code Ann. tit. 1, § 4 (1967) creates a hierarchy of sources for Virgin Islands law. In the event that no statute or precedent governs the issue, § 4 instructs the district court to look to the common law rules articulated in the various *Restatements*. If there is no *Restatement* rule on point, § 4 directs the court to the common law rules "as generally understood and applied in the United States." To the extent that the attorney-client relationship involves the ability of the attorney to bind his client to an agreement or stipulation, the relationship is controlled by the principles of agency law. *See Blanton v. Womancare, Inc.*, 38 Cal.3d 396, 403, 212 Cal.Rptr. 151, 154, 696 P.2d 645, 649 (1985). Because this area implicates practical and ethical considerations peculiar to the adjudicatory process, however, courts have glossed agency principles in light of these concerns. Therefore, we look to both the *Restatement (Second) of Agency* and judicial precedent for guidance in this area.

The common law recognizes two types of authority to settle a lawsuit that would bind the Edwardses to Groner's agreement. It is well settled that an attorney may compromise his client's case when the client has given him the express actual authority to do so. *See Bradford Exchange v. Trein's Exchange*, 600 F.2d 99, 102 (7th Cir.1979); *Associates Discount Corporation v. Goldman*, 524 F.2d 1051, 1053 (3d Cir.1975); *Thomas v. Colorado Trust Deed Funds, Inc.*, 366 F.2d 136, 139 (10th Cir.1966); Annot., 30 A.L.R.2d 944 (1953). The *Restatement (Second) of Agency* provides, with certain exceptions not relevant here, that actual authority (express or implied) may be created "by writ-

ten or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." *Restatement (Second) of Agency* § 26 (1958). A strong public policy exists in favor of settlements. Such a settlement, once entered, may be set aside only if the client produces "proof that the attorney had no right to consent to its entry." *Surety Insurance Co. of California v. Williams*, 729 F.2d 581, 582–83 (8th Cir. 1984), *quoting Bradford Exchange*, 600 F.2d at 102.

It is equally well settled that an attorney does not possess the inherent authority to compromise by virtue of his retention for litigation alone. *See Luis C. Forteza e Hijos, Inc. v. Mills*, 534 F.2d 415, 418 (1st Cir.1976); *Associates Discount Corporation*, 524 F.2d at 1053; *Blanton*, 38 Cal.3d at 404, 212 Cal.Rptr. at 155, 696 P.2d at 650; Annot., 30 A.L.R.2d 944, 945. A number of authorities support the proposition, however, that a client may clothe his attorney with the apparent authority to settle through the client's representations to the opposing party. *See Glazer*, 616 F.2d at 168; *Bergstrom v. Sears, Roebuck & Co.*, 532 F.Supp. 923, 933 (D.Minn.1982); Annot., 30 A.L.R.2d 944, 951; Spiegel, *Lawyering and Client Decisionmaking: Informed Consent and the Legal Profession*, 128 U.Pa.L.Rev. 41, 54–57 (1979). The *Restatement* provides, again with certain exceptions not relevant here, that apparent authority may be created "as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *Restatement (Second) of Agency* § 27.

■ The Edwardses contend that the district court erred in holding that apparent authority could suffice to render the settlement agreement effective. They suggest that the rule is a minority position, and therefore that the court's adoption of the doctrine contravened V.I. Code Ann. tit. 1,

§ 4's direction to apply the generally accepted common law rule of decision. We disagree. Although there is no consensus on this question, we do not believe that appellants have demonstrated the rule's minority status. In the absence of a clear trend in either direction, the district court of the Virgin Islands may apply the "better rule." *See LaPlace v. Sun Insurance Office Ltd.*, 298 F.Supp. 764, 766 (D.V.I.1969). This observation comports with the rule that a district court's determination of local law is entitled to a measure of deference on appeal where there is no clear local authority. *See, e.g., People of Guam v. Fejeran*, 687 F.2d 302, 303 (9th Cir.1982), *cert. denied*, 460 U.S. 1045, 103 S.Ct. 1444, 75 L.Ed.2d 800 (1983) (District of Guam); *Garcia v. Friesecke*, 597 F.2d 284, 295 (1st Cir.1979) (District of Puerto Rico). We find that enforcing settlement agreements on the basis of apparent authority is consistent with the principles of agency law, the policies favoring settlements generally, and the notions of fairness to the parties in the adjudicatory process. *See Bergstrom*, 532 F.Supp. at 933; Spiegel, 128 U.Pa.L. Rev. at 55.

Four factual findings supported the district court's determination that Groner had apparent authority to settle: (i) Groner had been the Edwardses' attorney since the suit's filing; (ii) Groner transmitted all communications between the defendants and the Edwardses; (iii) pretrial conference orders had been entered requiring the attorneys to appear with the authority to settle; and (iv) Keithley Edwards had entrusted Groner to select examining physicians and a psychiatrist to prepare for the trial. These findings are not clearly erroneous. They do not, however, warrant the legal conclusion that Groner had the power to settle.

■ The crucial question in ascertaining whether apparent authority has been created is whether the principal has made representations concerning the agent's authority to the third party. *See Amritt v. Paragon Homes, Inc.*, 474 F.2d 1251, 1252 (3d Cir.1973); *Restatement (Second) of*

*Agency,* §§ 8, 27. Apparent authority is an equitable doctrine that places the loss on one whose manifestations to another have misled the latter. We agree with appellants that the record is devoid of communications directly from the plaintiffs to defense counsel, much less representations that might have led defense counsel to believe that Groner had the Edwardses' permission to settle.

### III.

After reviewing the Edwardses' affidavits and Groner's testimony, the district court concluded that Groner did not have express actual authority to settle their claims. The district court defined express authority as the authority the client explicitly gives to his attorney. *See Edwards,* 608 F.Supp. at 583. We believe that the district court failed to consider the possibility that actual authority could be implied from the totality of the relationship between Groner and the Edwardses, including but not limited to the settlement directions, if any, Mr. Edwards gave to Groner.

The *Restatement* provides that the creation of implied actual authority is determined by a "reasonableness" standard. In particular, comment c to § 26 of the *Restatement (Second) of Agency* notes that the authority to perform a particular act "may be inferred from words or conduct which the principal has reason to know indicates to the agent that he is to do the act." *See also id.,* comment a (manifestation of authority, not the intent of the principal, controls). At the evidentiary hearing, Groner testified:

> [T]he basis for my authority in accepting the settlement which has been discussed is as follows: Mr. Edwards frequently through the course of our relationship, when asked whether he had a figure in mind, how much he wanted for his injuries, repeated to me that he did not have such a figure and that was my job, that's why he hired me, and very specifically directly after his deposition in Mr.

Moore's office in the latter part of November [1984] ... I told him that if the case were to settle it was going to settle within the next two weeks because there was a pre-trial conference and I asked him again if he had a figure which he required, and he told me, again, words to the effect, "No I do not. That's your job—or that's your business, that's why I hired you for, your profession, you are the lawyer." Mr. Edwards, I believe, again, by that gave me the authority to do what I did.... I believe[d] that Mr. Edwards at that time was speaking for both him and his wife.

Under the circumstances of this exchange, when the attorney is informing his client of the pendency of settlement conferences, Mr. Groner's interpretation of Edwards's response may have been reasonable.

The district court rested its conclusion in part on Ethical Consideration 7–7 of the *ABA Code of Professional Responsibility.* This section provides, *inter alia:*

> In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise, the authority to make decisions is exclusively that of the client.... As a typical example in civil cases, it is for the client to decide whether he will accept a settlement offer.

The Code of Professional Responsibility is divided into three interrelated components. The Canons set forth the "norms" for attorneys, stating the standards for professional conduct in general terms. Under each Canon, the Code includes Ethical Considerations and Disciplinary Rules. The Ethical Considerations are "normative" rules, expressing "the objectives toward which every member of the profession should strive." Preliminary Statement, *ABA Code of Professional Responsibility.* The Code's third part, the Disciplinary Rules, are mandatory, describing

"the minimum level of conduct below which no lawyer should fall." *Id.*[1]

Canon 7, providing that "[a] lawyer should represent a client zealously within the bounds of the law," is relevant to this appeal. Our review of the Disciplinary Rules does not reveal a directly applicable Rule. The most pertinent Ethical Consideration is the one identified by the district court. To the extent that this Consideration informs the standard of conduct to which an attorney should aspire in negotiating a settlement, it does not change our analysis. The Consideration does not envision constant contact with one's client regarding settlement offers, as the district court believed, only that the client should decide to accept the offer. Therefore, the district court should have examined the totality of the relationship to determine if Groner had the implied actual authority to settle the Edwardses' claims.

### IV.

■ On remand, the district court should hold an evidentiary hearing to determine Groner's implied actual or apparent authority to settle. At the hearing, the parties must present all evidence pertaining to the attorney-client relationship that may illuminate the existence of implied actual authority, evidence beyond mere conclusory statements that the attorney possessed or lacked the authority to settle. The court's inquiry should focus on the reasonableness of Groner's interpretation of his presettlement conference discussion with Mr. Edwards, and on whether Mr. Edwards should have understood that Groner would interpret his responses as giving Groner the express authority to settle. On the question of apparent authority, the court should

permit the defendants to introduce such evidence of plaintiffs' direct communications with them that would reasonably lead them to conclude that Groner had their permission to settle.

We will vacate the district court's order and remand for further action in accordance with our opinion.

---

1. The Preliminary Statement to the Code explains the relationship between these three parts:

> The Canons are statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public, with the legal system, and with the legal profession. They embody the general concepts from which the Ethical Considerations and the Disciplinary Rules are derived.

> The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive. They constitute a body of principles upon which the law can rely for guidance in many specific situations.

> The Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character. The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action.