# KEITHLEY EDWARDS and EDITH EDWARDS, Plaintiffs

## v.

## BORN, INC., et al., Defendants

Civil No. 1982/283

District Court of the Virgin Islands

Div. of St. Croix

October 10, 1986

MARK L. MILLIGAN, ESQ., St. Croix, V.I., *for plaintiffs*

NANCY V. YOUNG, ESQ., St. Croix, V.I., *for defendant St. Croix Petrochemical Corp.*

JAMES L. HYMES, III, ESQ., St. Thomas, V.I., *for Fluor Engineers & Constructors, Inc.*

DIANE TRACE WARLICK, ESQ., St. Croix, V.I., *for Born, Inc.*

O'BRIEN, *Judge*

# MEMORANDUM OPINION

This case requires us to decide whether to enforce the unauthorized settlement of a lawsuit that was subsequently approved by the disgruntled clients. Because of the ratification of the settlement by the clients, we will enforce its provisions.

## I. FACTS

The facts of this case were extensively detailed in Edwards v. Born, Inc., 608 F. Supp. 580 (D.V.I. 1985), rev'd and remanded, 792 F.2d 387 (3d Cir. 1986). Briefly, Keithley Edwards sued the defendants for injuries he suffered while working as an employee of Hess Oil Virgin Islands Corp. at its St. Croix refinery. He demanded $1 million compensatory damages for claimed back injuries and the loss of his olfactory sense. His wife, Edith, added a loss of consortium claim for an additional $100,000.

Trial was scheduled for January 1985, but the parties' attorneys agreed to a settlement of $150,000 during a pretrial conference on December 12, 1984. The plaintiffs, however, refuted their lawyer's authority to accept this offer and our decision to enforce the settlement was reversed and remanded by the Third Circuit Court of Appeals with instructions to hold an evidentiary hearing to determine whether the plaintiffs authorized the settlement. The hearing was held on August 21, 1986, wherein all parties had an opportunity to present evidence on the issue of implied actual authority, or apparent authority, to settle the lawsuit.

## II. DISCUSSION

██ The law of agency governs the ability of an attorney to bind the client to a settlement. Edwards, 792 F.2d at 389; ABA/BNA, Lawyers' Manual on Professional Conduct, 31:302 (1986). It is undisputable that the attorney is a mere agent and, therefore, cannot settle a lawsuit without first receiving authority from the client. E.g., United States v. Beebe, 180 U.S. 343, 352 (1901); Edwards, 792 F.2d at 389-90.

The Virgin Islands draws its agency law from the Restatement[1] where authority is defined as "the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him." Restatement (Second) of Agency § 7 (1958). Authority is "created by written or spoken

---

[1] See 1 V.I.C. § 4 (1967).

words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." Id. § 26. Reasonableness is judged on the basis of "the principal's manifestation and the facts as he knows or should know them at the time he acts." Id. § 33.

■ Public policy, however, strongly favors settlement and one "may be set aside only if the client produces 'proof that the attorney had no right to consent to its entry.'" Edwards, 792 F.2d at 390 quoting Surety Insurance Co. of California v. Williams, 729 F.2d 581, 582-83 (8th Cir. 1984).

It has been clear from the outset that the plaintiffs never expressly authorized the settlement. The Third Circuit instructed us to determine whether the plaintiffs gave Groner implied or apparent authority. We will analyze these inquiries as they apply to the Edwardses individually.

■ Apparent authority is created when a principal represents the authority of the agent to a third party. Edwards, 792 F.2d at 390-91 (citations omitted). The defendants have conceded that apparent authority is not at issue here because the plaintiffs had no direct contact with them. (Tr. 46.)

■■ Implied authority represents a more difficult question. It is a form of actual authority that is "'inferred from words or conduct *which the principal has reason to know* indicates to the agent that he is to do the act.'" Edwards, 792 F.2d at 391 quoting Restatement (Second) of Agency § 26, comment c (emphasis added). Whether the authority was inferred reasonably depends on the totality of the attorney-client relationship as well as the acts and words of the principal. Id. at 391. See Dillon v. City of Davenport, 366 N.W.2d 918, 924 (Iowa 1985). We conclude for several reasons that the record defies a finding of reasonableness.

First, it is clear that the plaintiffs were first-time litigants who had no concept of the procedural sequence leading to settlement of a civil suit. (Tr. 31, 56-57, 64, 77-78.) We do not doubt Groner's testimony that he and Keithley Edwards had the following colloquy:

> On several occasions I spoke with Mr. Edwards concerning what—what he expected from the lawsuit and what he thought would be fair compensation. And, I don't remember each and every place that those conversations took place, but I have a recollection that at least one of them took place in my old office and at least another one took place in my new office, in which

429

his answer was [the same as] what he told me on the day of the deposition which I testified to before: I don't know. I leave that up to you. You're my lawyer. That's your job. You're my lawyer.

It was a relationship of trust.

Additionally, there was that incident, that specific incident where, after his deposition at Eric Moore's office, which I referred back and found it was November 20th, he—at this time, the pre-trial conference was looming, and I said I thought that if this case was going to settle, it would settle in the next two weeks and what would he require for settlement.

And, he again said, "Well, you know, that's up to you. You're the lawyer. I trust you." Or something to that effect. That's your job. And, I think it's important even after the problem that came up around the settlement, our relationship was ongoing for another six weeks or so, and I think that reflects on the type of relationship we had.

(Tr. 9-10.)

■ The record is clear, however, that Keithley simply did not attach the significance to this conversation that Groner meant to convey. Neither plaintiff had the vaguest notion of the value of his or her respective claim (Tr. 29, 32-33), or how the recovery, if any, would be apportioned. (Tr. 45, 68.) Hence, clearly, Keithley was not in a position to give Groner carte blanche to settle. The principal's knowledge—actual and constructive—is the key to a finding of implied authority. See Restatement (Second) of Agency § 26, comment c. Groner's belief that he had the requisite authority was not reasonable because this element is clearly lacking. The fact that Edwards had unconditionally trusted the lawyer's advice on numerous other legal matters does not overcome his ignorance here.

The analysis is even more problematic with respect to Edith Edwards because she was obviously unaware that suit had even been filed on her behalf until after the settlement was reached. (Tr. 47-48, 50-51.) Prior to that, she did not deal directly with Groner and there is no indication that she authorized Keithley to, in turn, authorize Groner to settle. Consequently, no issue of implied authority is stated as to the settlement of her consortium claim.

430

Despite these findings, the settlement may still be enforced in its entirety if the plaintiffs ratified it. United States v. Beebe, 180 U.S. 343, 354 (1901); Smedley v. Temple Drilling Co., 782 F.2d 1357, 1361 (5th Cir. 1986); Quintel Corp., N.V. v. Citibank, N.A., 606 F. Supp. 898, 912 (S.D.N.Y. 1985). "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." Restatement (Second) of Agency § 82. Affirmance can be expressed by silence or "may consist of a manifestation of consent to be a party to the previous transaction, or a manifestation that such consent has been given." Id. § 83, comment b. It is effective when made and, absent fraud or illegality, irrevocable. Id. §§ 83, comment b, 102. The unauthorized act cannot be ratified, however, if the principal "is ignorant of material facts involved in the original transaction." Id. § 91(1).

Groner testified that Keithley Edwards ratified the settlement on the morning after it was reached upon their agreement that the net award would be $100,000. (Tr. 11-12.) He memorialized this new understanding in a letter to Keithley dated December 19, 1984.[2] A finding that Keithley ratified the settlement would be in order but for the confusion that surfaced a few days later as to whether the Keithley-Groner agreement encompassed Edith's claim. (Tr. 14, 69-70.) This consideration was material and the underlying uncertainty defeats ratification. See e.g., Beebe, 180 U.S. at 354; Smedley, 782 F.2d at 1361; Quintel Corp., 606 F. Supp. at 912.

The settlement was ratified, however, on January 2, 1985, when both plaintiffs told Groner that the settlement was acceptable. (Tr. 20-21, 53.) Groner recounted these events:

> Then, the next contact I had was from Mrs. Edwards on January 2nd. She called me and said she wanted to come in and talk to me. And, she came to my office and said she wanted to see the retainer agreement, the amended complaint and things like that. And I got them out for her and we discussed the settlement and the ratification of the deal that Mr. Edwards and I made the day after the settlement.

---

[2] Keithley Edwards denied having ratified the $100,000 settlement. He testified that the meeting yielded only a promise that he would discuss the offer with his wife. (Tr. 62, 66-69.)

431

And, we went through how much money they would net if we had gone to trial and there was the full expense of trial and there was no cutting of fees by Workmen's Compensation and by me. And then we talked about the problem of appeals and how long it would take to get the money. And it came out if there had been a jury award in the two-forty, fifty range, we discussed that the net figure would not be—it was like $17,000, $18,000 difference from what we were netting. And she said she understood and that it was acceptable to her. And she said she would talk to Keithley, or Mr. Edwards, excuse me. And, she left.

She took copies of the papers and that afternoon, I received a phone call from Mr. Edwards. And, it was a very nice phone call. He apologized for the day on December 20th when we had—when he had been so mad at me and he said he changed his mind again and the $100,000 was acceptable, and we were going to go forward.

(Tr. 20-21.)[3]

He memorialized this meeting in a letter to the plaintiffs dated January 11, 1985.

Resolution of this motion necessarily turns on the credibility of witnesses, at least as between Mr. Edwards and Groner, since Mrs. Edwards does remember the meeting with the attorney, but does not recall any agreement. Groner, as shown above, remembers in detail what transpired. But Mr. Edwards adamantly denies agreeing to the settlement. We observed the witnesses as they testified, and we find that Groner's testimony on this point is more credible. We will, therefore, enforce the settlement on the basis that the Edwardses will net not less than $100,000.

## III. CONCLUSION

■■■ An unauthorized settlement, as in this case, will be upheld and enforced if the clients ratified the terms of the settlement after their initial rejection.

## ORDER

THIS MATTER is before the Court on remand from the U.S. Court of Appeals for the Third Circuit. Defendants moved to enforce a settlement agreement with plaintiffs entered into by

---

[3] Edith Edwards recalled this meeting but testified that she did not remember actually ratifying the settlement. (Tr. 52-53.)

plaintiffs' attorney. The Court having filed its Memorandum Opinion of even date herewith, now therefore it is

ORDERED:

THAT the settlement agreement of $150,000 is valid and enforceable; and

THAT upon receipt of the settlement sum, the recipient shall first make full payment of the Workmen's Compensation claim as compromised, or in full if not compromised; and

THAT after such payment, the sum of $100,000 shall be disbursed to the plaintiffs, jointly; and

THAT the balance, if any, shall be disbursed to the attorney for plaintiffs who represented them during the litigation, including settlement.