**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL UNION 1332, et al., Plaintiffs,**

v.

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, et al., Defendants.**

**Civil Action No. 95–CV–6832.**

United States District Court, E.D. Pennsylvania.

Sept. 12, 1996.

Regina C. Hertzig, Charles T. Joyce, and Maurice R. Mitts, Philadelphia, PA, for Plaintiffs.

Paula R. Markowitz, Jonathan Walters, Philadelphia, PA, Robert Patrick Curley, Norristown, PA, Stanley B. Gruber, Philadelphia, PA, Ernest L. Mathews, Jr., Kevin Marrinan, New York City, and R. Matthew Pettigrew, Jr., Philadelphia, PA, for Defendants.

### MEMORANDUM

ANITA B. BRODY, District Judge.

Before me is a motion brought by counsel Maurice R. Mitts, Esquire purportedly on behalf of plaintiffs to "Direct the International Longshoremen's Association to Turnover Escrow Funds, to Vacate Order of Dismissal and to Set Aside Settlement Agreement" (referred to as the "Mitts Motion"). Having considered the record before me and submis-

sions of counsel as well as oral argument, I will deny the motion.[1]

### I. BACKGROUND

The International Longshoremen's Association, Local Union 1332 ["the Local"] and its president Thomas Blackwell ["Blackwell"] filed suit on October 26, 1995 against its parent union, the International Longshoremen's Association ["ILA"], and three of ILA's officers alleging that ILA unlawfully revoked the Local's charter and asking that its charter be reinstated. (Compl. ¶¶ 10–76.) On November 17, 1995, ILA responded that the Local's charter had been lawfully revoked under the ILA Constitution because the Local had failed to pay its dues to ILA. (Answer at 16–32.) On February 21, 1996, having been informed by plaintiffs' counsel Charles Joyce, Esquire ["Joyce"] that the lawsuit had been settled, (Letter from Joyce to me of 2/20/96), I dismissed the action with prejudice pursuant to Local Rule 41.1(b). By April 4, 1996, a written agreement was signed by all the defendants and by Blackwell on behalf of plaintiffs which provided, *inter alia*, for the dissolution of the Local.

On May 6, 1996, the Mitts Motion was filed to vacate the order of dismissal and to set aside the settlement agreement. Movant, which characterizes itself in the motion as the Executive Board of the Local (referred to as "the Board"), argues that the lawsuit must be reopened because it was settled without authorization from the Board.

### II. DISCUSSION

The Mitts Motion was filed pursuant to Local Rule 41.1(b),[2] which states as follows:

---

1. No evidentiary hearing was held on this motion. I expressed my willingness to hold such a hearing, but counsel for plaintiffs explained that a hearing was unnecessary and asked that I rule based solely upon the evidence presented in the briefs and exhibits. (8/20/96 Tr. at 4–6.)

2. Fed.R.Civ.P. 60(b) grants similar relief, but its grounds are more specific:

   On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered

in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

The standard of Local Rule 41.1(b) cannot go beyond the standard of Rule 60(b), because Rule 60(b) takes precedence over Local Rule 41.1(b). *See Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140

Whenever in any civil action counsel shall notify the Clerk or the judge to whom the action is assigned that the issues between the parties have been settled, the Clerk shall, upon order of the judge to whom the case is assigned, enter an order dismissing the action with prejudice, without costs, pursuant to the agreement of counsel. Any such order of dismissal may be vacated, modified, or stricken from the record, for cause shown, upon the application of any party served within ninety (90) days of the entry of such order of dismissal.

E.D.Pa.Local R.Civ.P. 41.1(b).[3]

■ A strong public policy exists in favor of settlements. *See Edwards v. Born, Inc.,* 792 F.2d 387, 390 (3d Cir.1986). The settlement may be set aside only if the Board meets its burden of proving that "cause" exists to vacate the dismissal order. *See id.* In deciding whether the Board has met its burden, I have examined all evidence presented by both sides in order to determine whether, on balance, the Board has proven "cause" by a preponderance of the evidence.

The Board argues that cause exists to vacate the dismissal order for two reasons: (1) plaintiffs' counsel Joyce, although believing he had authority to settle the case, actually did not have authority, and (2) even if Joyce did have authority, the settlement

agreement is defective because the offer to settle was withdrawn before it was accepted, and also because the agreement was the product of fraud. *See Mid–South Towing Co. v. Har–Win, Inc.,* 733 F.2d 386, 387 (5th Cir.1984) (articulating two alternative grounds for challenging a settlement—the attorney's lack of authority to settle, and a defect in the settlement agreement).

■ As this case arises under federal law, specifically under section 301 of the Labor Management Relations Act ["LMRA"], 29 U.S.C. § 185, I must apply federal law to determine the validity of the settlement agreement. *See In re Complaint of Bankers Trust Co.,* 752 F.2d 874, 883–84 (3d Cir.1984). However, pursuant to the opinion in *Carbon Fuel Co. v. United Mine Workers of Am.,* 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979), on issues regarding agency I must apply the "common-law rule of agency."[4] *See id.* at 216, 100 S.Ct. at 413.

### A. Joyce's Authority to Settle the Lawsuit

■ The Board argues that Joyce had no authority to settle this case and that his lack of authority constitutes cause to vacate the dismissal order. Few cases have interpreted the meaning of the word "cause" in Local Rule 41.1(b), but it is clear that "cause"

(3d Cir.1993). With this in mind, I interpret the "cause" in Local Rule 41.1(b) to be that articulated in Rule 60(b).

**3.** The Local Rule permits a motion to be filed by "any party." Similarly, Fed.R.Civ.P. 60(b) provides that the court may grant relief to "a party or a party's legal representative." Therefore, the first obstacle the movant faces is to show that it has standing to bring this motion as a "party." The Board argues that it is a party to this lawsuit:

> [I]t is beyond question that the Local acts through its Executive Board, and in bringing the Motion both the Local's individual members and its Executive Board authorized that submission. Further, ... the By–Laws of Local expressly define the Executive Board as the "highest governing authority within the Local between membership meetings, and shall exercise general supervision over ... its property and affairs."

(6/7/96 Suppl.Mem. Mitts Motion at 1 n. 1.) This argument may fail to meet the burden of the Board to prove that it has standing to file this

motion, especially in light of the fact that president Blackwell also has substantial powers under the by-laws and that it was Blackwell, with the backing of the Board, who initiated the lawsuit in the first instance. ILA did not pursue the standing issue, and therefore I need not address it, especially in light of the fact that the weaknesses in the Board's standing argument are those upon which I base my denial of this motion.

**4.** I have found no court that has clarified the meaning of "common law of agency," i.e., whether it means federal common law, state common law, or the common law as stated in the *Restatement (Second) of Agency* (1958). As one common law does not seem to differ significantly from the next, however, I am not concerned about this distinction. *See Kirk v. Raymark Indus.,* 61 F.3d 147, 164 (3d Cir.1995) (citing to *Restatement (Second) of Agency* ), *cert. denied,* ——— U.S. ———, 116 S.Ct. 1015, 134 L.Ed.2d 95 (1996); *Butler v. Flo–Ron Vending Co.,* 383 Pa.Super. 633, 557 A.2d 730, 736 (same), *appeal denied,* 523 Pa. 646, 567 A.2d 650 (1989). I will apply the *Restatement (Second) of Agency.*

exists if the Board produces "proof that [plaintiffs'] attorney had no right to consent" to settlement.[5] *Edwards,* 792 F.2d at 390 (quoting *Surety Ins. Co. v. Williams,* 729 F.2d 581, 582–83 (8th Cir.1984)). Therefore, if the Board could prove that Joyce had no authority to settle, I would vacate the order of dismissal.

█ The Board argues that Joyce had no authority to settle because he was following the orders of Blackwell, who himself did not have authority to settle. Specifically, the Board argues that Blackwell could not settle without first *obtaining* the approval of the Board.[6]

The parties assume, and it is standard hornbook law, that I must look to the union's constitution and by-laws to determine the authority of union officers and members. (5/6/96 Mem.Supp. Mitts Motion at 2; 6/3/96 Mem.Opp'n Mitts Motion at 3.) *See* Martin H. Malin, *Individual Rights Within the Union* 9 (1988). The Board relies entirely on Article IV, section (b) of the Local's by-laws to support its position that Blackwell lacked authority to settle. (9/4/96 Tr. at 21.) Article IV(b) states:

> The Executive Board shall be the highest governing authority within the Local between membership meetings, and shall exercise general supervision over its property and affairs.

(By-laws, Art. IV(b), Appendix to 7/29/96 Brf. Supp. Mitts Motion, Ex. C.) This provision standing alone fails to prove that Blackwell lacked authority, or that the Board had the sole authority to settle a lawsuit, especially in light of Blackwell's significant powers as president:

> The President shall be the Executive Officer of this Local. He ... shall be chairman of the Executive Board. He shall coordinate and administer the affairs of the Local.

(By-laws, Art. IX(a), Appendix to 7/29/96 Brf. Supp. Mitts Motion, Ex. C.) Neither section addresses who deals with those outside the union, whose job it is to commence or terminate litigation or the relationship between the President and the Executive Board.

█ When a union's constitution and by-laws are ambiguous or silent, for guidance I can look to the union's past practices. *See* Malin, *supra,* at 14. Evidence was presented that Blackwell had in the past settled lawsuits on his own authority, as had other presidents of the Local. (Dep. Thomas Blackwell, Appendix to 7/29/96 Brf.Supp. Mitts Motion, Ex. A.) Therefore, the Local did not meet its burden of proving that Blackwell lacked authority to settle the lawsuit without authorization from the Board.

█ The Board also argues that, even if Blackwell did have authority to settle, the Board revoked his authority by way of a letter from the Board to the president of ILA indicating that the settlement was unauthorized. (7/29/96 Brf.Supp. Mitts Motion at 8–11.) But the letter is insufficient proof that Blackwell's authority was revoked, because an agent's authority can be revoked only upon notice to the agent that the principal no longer authorizes the agency relationship. *Restatement (Second) of Agency* §§ 118, 119 (1958). While the Board presented evidence that it communicated the attempted revocation to ILA, (3/28/96 Letter attached to Mitts Motion), it failed to present evidence that the attempted revocation was communicated to either Blackwell or Joyce. Furthermore, the attempted revocation did not occur until April 1996, yet Joyce had informed me of a settlement in February 1996. The Board presents no evidence as to the status of the written agreement—it may well be simply a memorialization of an oral agreement already reached in February, in which case the attempted revocation was untimely.

The Board failed to meet its burden to prove that Blackwell had no authority to settle or that the Board validly revoked Blackwell's authority before he settled the case. It therefore did not prove that cause

---

**5.** Proof of Joyce's lack of authority would also constitute cause to vacate the agreement under Fed.R.Civ.P. 60(b). *See Edwards,* 792 F.2d at 390.

**6.** ILA did not contest, and therefore for purposes of this opinion I am assuming, that Blackwell did not take a vote of the Board before settling the lawsuit.

exists to vacate the dismissal order due to the lack of Joyce's authority to settle.

### B. The Validity of the Settlement Agreement

As an alternative basis for attacking the order of dismissal, the Board argues that the underlying settlement agreement itself is defective, not only because Blackwell had no authority to sign it on the Local's behalf, but also because the settlement offer was withdrawn before it was accepted, and because the agreement was the product of fraud. If the agreement is defective for any of these reasons, there could be cause to vacate the dismissal order under Fed.R.Civ.P. 60(b),[7] and therefore under Local Rule 41.1(b).

#### 1. Authority of Blackwell to Sign the Settlement Agreement on Behalf of the Local

The Board argues that Blackwell did not have authority to sign the settlement agreement without the approval of the Board. The Board relies solely upon the words of the by-laws in support of its argument. As explained above, the Board's argument is unpersuasive, and therefore the Board did not meet its burden to prove that Blackwell did not have authority to settle without authorization from the Board.

#### 2. Withdrawal of the Settlement Offer

■ The Board also argues that the settlement agreement is invalid because the Board withdrew the offer of settlement before it was accepted by ILA. (7/29/96 Brf.Supp. Mitts Motion at 8–11.) The Board points once again to the letter it sent to the president of ILA indicating that the settlement was unauthorized. The letter is not a valid withdrawal, however, even assuming the Board had authority to withdraw the settlement offer, because the Board did not prove that the letter was received by ILA before ILA accepted the settlement offer.

The parties do not dispute that an offer of settlement may be withdrawn before it is accepted, and that such a withdrawal is effec-

tive upon receipt. *See Restatement (Second) of Contracts* § 42 (1979). The Board's letter was received by the president of ILA on April 3, 1996, but evidence was presented that this case had actually settled over a month earlier. In fact, Joyce sent me a letter on February 20, 1996 informing me that the case had settled. The Board nevertheless argues that the case was not actually settled until April 4, 1996, the date of the last signature on the settlement agreement.

If the parties had in fact agreed to the settlement terms as of February, which appears to be the case since all plaintiffs and two defendants signed the agreement in February, then the signing of the last signature in April may have been a mere formality. If so, then the case was settled as of the date the terms of the agreement were finalized in February. *See United Mine Workers of Am., District No. 2 v. Barnes & Tucker Co.*, 561 F.2d 1093, 1097 (3d Cir.1977) (a settlement agreement is enforceable under section 301 of the LMRA as long as it is final and binding by its own terms, and as long as its terms are clear, specific and complete).

The Board points to paragraphs 6 and 7 of the settlement agreement as proof that the case was not settled until all signatures were on the agreement (7/29/96 Brf.Supp. Mitts Motion at 9):

6. The Plaintiffs and Robinson agree that within five (5) days of the execution of this Settlement Agreement by all parties, they will, in accordance with Article XVI, Section 9 of the International Constitution, transfer to Gleason, all books, records, property, funds and assets of Local 1332 to the International. . . .

7. The Plaintiffs and Robinson agree that within five (5) days of the execution of this Settlement Agreement by all parties, they will take, or arrange to have taken, all steps necessary to provide for the legal transfer of title of the property located at 524 South Front

---

**7.** If the Board proves that the agreement was the product of fraud, Rule 60(b)(3) applies explicitly. If, on the other hand, the Board proves either that Blackwell had no authority to sign the agreement or that the settlement offer was with-

drawn before it was accepted, then I would consider Fed.R.Civ.P. 60(b)(6), a catch-all provision that allows a final judgment to be vacated for any reason "justifying relief from the operation of the judgment."

Street, Philadelphia, Pennsylvania, to the International and/or trustees appointed or designated by the International for purposes of taking title to such property.

(Appendix to 7/29/96 Brf.Supp. Mitts Motion, Ex. A.) The Board argues that these paragraphs must be interpreted to mean that the case is not settled until all signatories have signed the agreement. This is only one possible interpretation among many, however. For example, perhaps counsel realized the case had settled in February but wanted all parties to sign a written memorialization of the agreement so that there would be no question as to the terms of the settlement or the parties involved. Paragraphs 6 and 7 of the agreement would then operate as an incentive to all parties to sign the memorialization, as opposed to a method of accepting the settlement offer.

Therefore, while the argument of the Board has some merit, the Board did not prove that its interpretation of the agreement is the correct one. No testimony was introduced regarding the intention of the parties. On balance, the Board did not prove that the case had not settled in February, and it did not prove that all seven signatures were required to be on the settlement agreement before the settlement offer was considered accepted. The Board therefore failed to meet its burden of proving that its letter withdrew the settlement offer.

### 3. Fraud in the Settlement Agreement

Finally, the Board argues that the settlement agreement must be set aside because ILA fraudulently signed it knowing that the settlement was unauthorized. (9/4/96 Tr. at 46.) Fraud is cause for vacating a dismissal order under Federal Rule 60(b)(3) and therefore under Local Rule 41.1(b). However, the Board presents no new evidence to support its claim of fraud, and it therefore fails to meet its burden for the same reasons it failed to prove the settlement was unauthorized.

### III. CONCLUSION

The Board did not meet its burden under Local Rule 41.1(b) to prove that the settlement was unauthorized or that the settlement agreement is invalid. There is

therefore no cause to vacate the order of dismissal. The law dictates this result, and so does sound policy. A court should not be required to monitor the internal affairs of each party to a lawsuit to assure that those parties before it have authority to transact the court's business. Just as serious, if a party could easily renege on a settlement by crying "no authorization," the court could become susceptible to manipulation by a collusive party that had second thoughts about the settlement and wanted out. Therefore, the Mitts Motion will be denied.